(225 P.3d 773)
No. 99,914

STATE OF KANSAS, *Appellee*, v. DARREN BLIZZARD, *Appellant*.

Opinion filed March 12, 2010.

*Kevin M. Smith*, of Law Offices of Kevin M. Smith, P.A., of Wichita, for appellant.

*Vernon E. Buck*, first assistant county attorney, *Marc Goodman*, county attorney, and *Steve Six*, attorney general, for appellee.

Before RULON, C.J., ELLIOTT and HILL, JJ.

HILL, J.: This appeal raises the question of how to count the number of days a criminal case is pending when it has been dismissed by the district court, revived by the Court of Appeals, and then remanded to the district court for trial. In this appeal, Darren Blizzard contends he did not receive a speedy trial. Previously, a panel of this court had reversed the district court's dismissal of Blizzard's case and remanded the case for trial. See *State v. Blizzard*, 2005 WL 2001739 (Kan. App.) (unpublished opinion), *rev. denied* 280 Kan. 985 (2005). After remand, the district court set his trial to begin May 24, 2006, more than 180 days after his arraignment. In Kansas, a defendant *held to answer on an appearance bond* must be brought to trial within 180 days after arraignment. But because the district court had dismissed this case, it ordered Blizzard released from custody and relieved him of any appearance bond restrictions while the State's appeal was pending. We hold Blizzard's speedy trial calculation started again when, on remand, the district court ordered him to post an appearance bond. Therefore, counting the 55 days the case was pending before the district court dismissed it (arraignment to dismissal) and the State appealed, with the 69 days from the time Blizzard posted bond to May 24, 2006, only 124 days elapsed. Thus, his trial was timely set.

Our review of the record forces us to reject Blizzard's claim that not enough evidence supports the jury verdict. We affirm his conviction.

*The procedural history is important here.*

The State charged Darren Blizzard with a violation of K.S.A. 65-4161, sale of cocaine within 1,000 feet of a school, felony possession of drug paraphernalia in violation of K.S.A. 65-4152(a)(3); receiving proceeds derived from a violation of the Uniform Controlled Substances Act in violation of K.S.A. 65-4142; arranging the sale of drugs by using a communication device in violation of K.S.A. 65-4141; and obstruction of official duty in violation of K.S.A. 21-3808.

The court arraigned Blizzard on these charges on May 28, 2004. Blizzard moved to dismiss the case based on speedy trial grounds, explaining that he was arraigned on the same charges in a prior case, but the State dismissed that case because the prosecutor

could not locate a witness. Blizzard argued that because the speedy trial period started from the date of his arraignment in the prior case, the statutory time limit had elapsed and the court should discharge him.

The district court granted Blizzard's motion. While doing so, the court acknowledged the State's intent to appeal this ruling. Thus, the court discharged Blizzard but ordered the parties to present written argument concerning whether Blizzard should remain in custody or be released on bond during the pendency of an appeal. Later, the district court ordered Blizzard's release from jail. The State appealed the district court's dismissal, and on December 21, 2005, this court issued a mandate reversing the decision of the district court and ordering reinstatement of all charges against Blizzard.

Eventually, in March 2006, the district court held a status conference concerning the case. Blizzard did not appear. The court noted Blizzard was "not on bond" and had been released from jail. The court determined that it had until June 19, 2006, to conduct a trial, as it had "180 days from the date of the mandate." Thus, the court suggested an April 5, 2006, or May 24, 2006, trial date. Defense counsel responded that he would no longer be employed with Kansas Legal Services on those dates. Because the court did not know whether Blizzard needed appointed counsel, it scheduled another status conference to allow the parties to locate Blizzard and find out whether he needed appointed counsel.

Blizzard did appear at a status conference on March 17, 2006. Blizzard told the court that he had hired his own attorney. Nevertheless, defense counsel told the court that a Ty Wheeler from Kansas Legal Services could handle the case in May. Noting Blizzard would have the "prime" setting on the May trial date, the court removed the April trial date and set Blizzard's trial for May 24, 2006. Noting Blizzard was there "without being arrested," the court ordered Blizzard to sign a promise to appear with a $5,000 personal recognizance bond. Blizzard filed his bond that day.

On May 8, 2006, Blizzard once again moved to dismiss his case based on speedy trial grounds. Blizzard argued that the time accrued for speedy trial purposes from (1) the date he was arraigned

to the date the district court dismissed the case, and from (2) the date the State filed its notice of appeal (or alternatively, the date the appellate court's decision was filed) to the date of the current motion. Blizzard claimed that either 644 days or 307 days had elapsed during this time; therefore, his right to a speedy trial under K.S.A. 22-3402 was violated.

The district court denied Blizzard's motion, holding that any delay causing the trial date to be scheduled more than 180 days after Blizzard's arraignment "was caused by the actions of the defendant's previous counsel, and is binding upon the defendant."

On July 30, 2007, Blizzard asked the court to reconsider its decision. Blizzard noted the district court denied his motion because it found Blizzard waived his right to a speedy trial by accepting a trial date outside the speedy trial period. Blizzard argued the court should reconsider its position based on *State v. Adams*, 283 Kan. 365, 369-71, 153 P.3d 512 (2007), where the court held that defense counsel's acceptance of a trial date is not an acquiescence or waiver of the defendant's right to a speedy trial. The district court denied Blizzard's motion for reconsideration without conducting a hearing.

A jury found Blizzard guilty of sale of cocaine within 1,000 feet of a school zone and obstruction of official duty and/or legal process. He now raises the speedy trial issue and claims insufficient evidence on appeal.

*Blizzard's trial setting was timely.*

When reviewing whether a right to a speedy trial has been violated, this court has unlimited review. *State v. Hayden*, 281 Kan. 112, 126-27, 130 P.3d 24 (2006). We will look first at the statute that controls the issue and the cases that have interpreted the law.

Our Kansas law guarantees a criminal defendant's right to a speedy trial. Under K.S.A. 22-3402(2):

"If any person charged with a crime *and held to answer on an appearance bond* shall not be brought to trial within 180 days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (5)." (Emphasis added.)

We hold that the statute specifically applies to defendants held to answer on an appearance bond. This requirement disposes of Blizzard's claim on this point.

The salient dates are obvious. When Blizzard first appeared before the district court on April 19, 2004, he was in custody and bond was set at $50,000. He was arraigned on May 28, 2004. The journal entry executed at that time indicated that his bond continued. The court later granted Blizzard's motion to dismiss and ordered his release from jail on July 21, 2004. After reinstatement of the charges and remand of the case, on March 14, 2006, the court noted Blizzard was "not on bond" and had been released from jail. Then on March 17, 2006, the court set Blizzard's trial for May 24, 2006, and then ordered Blizzard to post a $5,000 "OR bond."

Based on the procedural history of this case, it is clear that Blizzard was arraigned and held to answer on an appearance bond for 124 days. First, 55 days passed from the date of his arraignment, May 28, 2004, to the date he was released from jail, July 21, 2004. Then, there were 69 days from the date the bond was reimposed, March 17, 2006, to the date set for trial, May 24, 2006. Thus, Blizzard's trial was set within the 180-day speedy trial period. Blizzard's statutory right to a speedy trial was not violated.

The district court held Blizzard's right to a speedy trial was not violated because any delay causing the trial date to be scheduled more than 180 days after Blizzard's arraignment was caused by the actions of defense counsel. This conclusion was based on the district court's erroneous conclusion that May 24, 2006, was outside the speedy trial period. Even though the district court relies upon the wrong grounds and has assigned erroneous reasons for its decision, this court will uphold the decision when the court has reached the right result. See *Bergstrom v. Noah*, 266 Kan. 847, 875-76, 974 P.2d 531 (1999).

We distinguish this case from *State v. White*, 34 Kan. App. 2d 182, 115 P.3d 785 (2005), cited by Blizzard. The court in *White*, following the directive in *State v. Brown*, 263 Kan. 759, 762, 950 P.2d 1365 (1998), held that the receipt of the mandate of the appellate court by the district court started the statutory speedy trial period to run after an *interlocutory appeal* was taken by the State.

The court in *White* pointed out that according to K.S.A. 2004 Supp. 22-3604(2) the time during which an interlocutory appeal by the prosecution is pending is not counted against the State for speedy trial purposes. The case against White was always pending during the interlocutory appeal. See *White*, 34 Kan. App. 2d at 183-84.

Blizzard wrongly construes the appeal in this case as interlocutory. To the contrary, this case was dismissed by the district court. When the State appeals the dismissal of a complaint to this court under K.S.A. 22-3602(b)(1), in such instances, K.S.A. 22-3604(1) provides that a defendant shall neither be "held in jail nor subject to an appearance bond during the pendency of any appeal by the prosecution." Going further, K.S.A. 22-3604(2) states the time during which an appeal by the prosecution is pending shall not count against the State for speedy trial purposes under K.S.A. 22-3402. Obviously the legislature intended to minimize the impact of the delay of a State's appeal on the defendant by directing the accused not to be held in jail and requiring no appearance bond. There were no restraints on Blizzard's liberty during the appeal here. He was not only released from custody, but he was also under no obligation to the court for he was released from his appearance bond.

Blizzard's remaining arguments on appeal of this point are all based upon the belief that the 180 days had passed; therefore, we will not address them and turn to the issue of whether there was sufficient evidence.

*We recount more of the facts of this controlled drug purchase.*

Blizzard argues that because the "State's primary witness" testified she may have received the drugs in question from a person other than Blizzard, a rational factfinder could not have found him guilty. Blizzard's argument primarily confronts his conviction for sale, delivery, or distribution of cocaine within 1,000 feet of a school zone. When dealing with such issues we examine the facts in the light most favorable to the State:

"When a defendant challenges the sufficiency of the evidence in a criminal case, the standard of review is whether after reviewing all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reason-

able doubt. [Citation omitted.]" *State v. Gant*, 288 Kan. 76, 83, 201 P.3d 673 (2009).

Detective Mark Schondelmaier testified that on December 24, 2003, he was told narcotics detectives were setting up a drug transaction/buy and that he was to assist with surveillance. The confidential informant involved in the transaction was named Delia Krueger. Krueger had arranged to purchase crack cocaine from another individual.

Krueger was taken to the Emporia Police Department and searched for narcotics, controlled substances, and U.S. currency. None of these items were found on Krueger's person. Krueger was fitted with a wireless transmitter so detectives could record any conversation during the transaction. Krueger then given $50 in U.S. currency that was photocopied and recorded by Detective Kevin Risley.

Krueger was placed in an unmarked undercover car with Detective Mark Senn and Schondelmaier. Senn drove to an area where there was a pay phone. Risley testified Krueger could use the phone to call the person she was going to attempt to purchase cocaine from—a person she knew as "Sexy." Krueger told Risley that "Sexy" may possibly be driving a green sport utility vehicle. Krueger made the phone call. Schondelmaier testified he could not hear the conversation Krueger had on the phone but that Krueger talked to someone and told the detectives that "Sexy" agreed to meet her at some mailboxes on East Street. Risley testified that he listened to Krueger make the phone call and listened to her conversation.

Senn and Schondelmaier transported Krueger to the area where the mailboxes were located and let her out of the vehicle. Senn and Schondelmaier followed Krueger to make sure she did not have contact with anyone. Both Senn and Schondelmaier testified Krueger was under continuous surveillance. Risley also drove to the area and parked where he could see the back of the mailboxes.

Krueger walked to the mailboxes and Senn parked about 100 feet away. Schondelmaier testified that within a couple of minutes, another person arrived in the area. Senn described the person as

a black female. Schondelmaier testified he was able to see that there was no physical contact between Krueger and the person, that they might have just talked from a distance, and that Krueger kept her hands inside her jacket pockets. Senn agreed that Krueger and the person talked but that there was no physical contact between them. Senn testified Krueger had her hands in her jacket pockets and never removed her hands during this time. Deputy Chief Michael Williams also testified there was no "person-to-person contact" between the two. The person then left.

After a few more minutes, a green Honda Passport arrived and parked east of the mailboxes. Krueger walked to the driver's side of the Passport and leaned in. Schondelmaier testified Krueger conversed and made contact with the driver, possibly placing both arms into the vehicle. Schondelmaier testified he did not see anything exchanged between Krueger and the driver. After a minute or so passed, the Passport continued on and Krueger walked southbound.

Krueger walked to an alleyway where she met Risley and got into his vehicle. Both Senn and Schondelmaier testified Krueger was under continuous surveillance during this time and did not make contact with anyone. Krueger told Risley that the transaction had been completed and that she had purchased crack cocaine. Senn and Schondelmaier then pursued the Passport. At some point, the Passport swerved through a backyard and hit a tree. The driver jumped out of the Passport and began running. An individual identified as Blizzard was finally apprehended and searched.

Schondelmaier testified that he later approached the Passport and looked inside. He observed currency on the floorboard of the vehicle. The currency was secured and photocopied. When Risley later compared the bills found inside the Passport to the previously recorded bills given to Krueger, the serial numbers on all four bills matched.

Risley transported Krueger to the Emporia Police Department. Risley told Krueger to give him what she purchased and Krueger produced three small corners off a plastic bag that contained a white substance. The substance tested positive for cocaine.

At trial, Krueger repeatedly responded to questioning by stating she did not know and had no idea. She stated "no" when asked whether she remembered various details and indicated she was "messed up" at the time of the transaction. Krueger testified that the "girl over by the mailboxes" was a black girl named Mahogany. When asked whether Mahogany gave her anything on the day of the transaction, Krueger stated, "I don't think so. I don't know." When asked whether Mahogany gave her drugs that day, Krueger stated she did not know whether she did or not. Krueger was then asked whether Blizzard gave her anything that day. Kruger stated that "I think we traded" but that she was not sure. Krueger testified that she knew she gave Blizzard some money but did not remember what she got.

The State then reminded Krueger of testimony she gave at her preliminary examination conducted in May 2004. Krueger read testimony from this transcript indicating she told Risley she could purchase crack cocaine from Blizzard. Krueger read testimony indicating she made contact with Blizzard via a pay phone. Krueger read testimony indicating Blizzard gave her "three packages" described as "[r]ocks and pieces in plastic tie." On cross examination, Krueger agreed it was "possible" she got the drugs from someone else besides Blizzard and did not recall exactly who she got them from. Krueger noted she saw Mahogany and talked to her. Krueger testified she did not remember dropping money in Blizzard's vehicle. Krueger agreed it was possible she could have gotten drugs from Mahogany.

Here, there was sufficient evidence that Blizzard violated the law by selling cocaine to Krueger. First, Krueger was given $50 in U.S. currency that matched the currency later found in Blizzard's vehicle. Second, although detectives testified Krueger spoke with another person while at the mailboxes (*i.e.*, Mahogany), each detective testified Krueger and Mahogany made no physical contact, only talked, and that Krueger kept her hands in her jacket pockets. To the contrary, there was testimony that Krueger made contact with Blizzard by leaning into his vehicle and possibly placing both arms inside. Krueger testified at her preliminary examination that Blizzard gave her "three packages" described as "[r]ocks and pieces

in plastic tie." Finally, when detectives pursued Blizzard, he engaged in both a vehicle and foot chase with them.

A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Scaife*, 286 Kan. 614, 618-19, 186 P.3d 755 (2008). Here, there was sufficient circumstantial evidence that Blizzard sold, delivered, or distributed cocaine to Krueger. Only some portions of Krueger's wavering testimony suggest otherwise.

Affirmed.